21-3113 United States v. Johnson. And Ms. Carruthers, you may proceed. May it please the court. Candace Carruthers for Assistant Federal Public Defender. Could you pull the mic down a little bit closer to your mouth? Thank you. Assistant Federal Public Defender for Mr. Johnson. In this case, it is undisputed that the proper jury instruction, the constructive possession wrongly omitted the intent requirement. So then the critical inquiry for this court is whether that plain error affected Mr. Johnson's substantial rights. The answer is yes for two reasons. First, because the car belonged to a woman. A woman was the major DNA contributor to the swap taken from the gun, and many people had access to the car. It is reasonably probable that the jury relied on constructive possession. Second, because the evidence of Mr. Johnson's intent was not strong, and the prosecutor encouraged the jury to convict because Mr. Johnson had to have known the gun was there. This court cannot be confident in the outcome of Mr. Johnson's trial. With respect to my first point, it is reasonably probable that the jury relied on constructive possession. This is because the DNA evidence pointed to a Mr. Johnson's theory that Ms. Pricklet missed many people borrow the car. There were four contributors to the DNA sample. And sitting on the gun does not constitute actual possession. It's not carrying as we typically know actual possession to be. And touching the gun is insufficient for actual possession in any circuit. Mr. Johnson was driving at midnight, in the dark of night, and so he could have simply not seen the gun. It was a black pistol. He also was drinking. We know that he turned the wrong way down a runway street that was labeled do not enter. He was alone in the car, right? That's correct. Yeah, so given that fact, does it really matter that there might have been others that had access to the car? Yes, it does. I think Samora is a good example of that, where this case was analyzed as a joint possession case and reversed because the defendant was driving his girlfriend's car. And in other cases, a good example is Giannoukos, where the gun was found next to a woman's purse, a pink bag with a holster in it, and the major DNA contributor was a woman. This court reversed because a jury would not be compelled to conclude that Mr. Johnson intended to. So, counsel, are you saying that we have to, in these cases, always look at DNA and only if there's DNA that ties the defendant to the weapon, do we have a conviction that can be upheld? No, Your Honor, but I think having DNA at least provides the inference that the gun had been found. We have him literally sitting on the gun. Isn't that a little hard to ignore? Wouldn't he not know the gun was there? He's sitting on it. Well, that's the problem in this case. Knowledge is not what was necessary. And we have the prosecutor four times telling the jury, didn't he know it was there? How can he not have known that it was not there? And that makes this case like Simpson, where the prosecutor offered a jury wouldn't have to consider that question on an intent. And we don't know, did Mr. Johnson, if he knew the gun was there, there's lots of reasons why he may not have intended to do anything with it. Like I said, he was drunk or possibly, we don't know how intoxicated he was, but he did have a beer bottle in his hand, turned the wrong way down a one-way street. And the officer that approached him said, I guess I don't have to ask you to be drinking tonight. And so you may not have direct physical control over something you just sit by on an evening when you're casually driving around. What if the gun were just next to the driver in the center console, clearly visible, he could reach it. Would that be actual possession in your view? I don't think it would be actual possession. It would be a closer case because that would be so readily accessible. In this case, we have Mr. Johnson was driving around with a beer bottle in his hand. He would have to have lifted his entire body up to access that gun. And so I think that's a different example. One could also infer that he placed the gun on the seat underneath the mat when he was being pulled over for driving down a one-way street. Well, in Samora, this court said if a reasonable jury could conclude that he had the intent, but they also could conclude that he did not, then the inference is not compelled and reversal is still appropriate. And I don't think the inference is compelled with the facts we have. I think it could be best that he's in possibly that he's indifferent to an object he didn't own. And you contend that because he may not have known he was sitting on a nine millimeter pistol. Well, he may have known it, but he didn't want to plan to do anything with it. And there's questions about Mr. Johnson's intent that evening that the jury had no reason to grapple with because the prosecutor told them four times that he had to have at least known the gun was there. Mr. Johnson argued at trial that he was not possessing this gun. And so if you have facts where he at least knew it was there, then the jury would take that much easier path to conviction. And this statements from the prosecutor are given right before they go deliberate. And that makes this case different from Zhang, where we have a prosecutor put up a slide that has the correct standard and ask the jury, who do you have the intent to possess this gun? The government did the opposite here four times that he at least knew it was there. And I think the evidence on that question is stronger. It's an easier path to conviction. Doesn't the 404B evidence get nudged closer to knowledge or intent? I think it's relevant, but I don't think it's compelling in this case. And I, for several reasons, that statement was not very strong as evidence itself. Mr. Johnson was an uncounseled juvenile. He was 17 years old and it was more 13 years ago. And if you look at a case where Benford, where there was testimony that the defendant had handled the gun just 19 days before, and this court still reversed. And so I think having used a firearm in the past, if it wasn't compelling when the defendant had used it 19 days before, I don't think it's compelling when Mr. Johnson's statement was a decade old and he was a juvenile that was not represented by counsel. Counsel, could we go back to the Zhang case? Wasn't, didn't that case also involve a faulty jury instruction where the intent element was omitted? So I, could you explain why, it seems that this case is even stronger that the evidence shows intent to possess, but you're saying the opposite. So could you compare the two cases and tell us why Zhang got controlled here? We're distinguishable from Zhang for at least four reasons. And I think it's important in Zhang that all of those reasons that I'm going to discuss led to reversal and some of them are not here. So the drug dealing in Zhang compelled the inference that the gun was with the firearm. The gun was with the drugs because it was presently imminent. They drove 70 miles away for a half a million dollar drug deal with 33 pounds of meth. Here we have Mr. Johnson casually driving around at 1230 at midnight with a beer in his hand. So we don't have that same type of high intensity, dangerous situation that compels the conclusion that the next, I've already mentioned the PowerPoint. Well, counsel, we do have a conviction of possession with intent to distribute cocaine base. So is the difference really that significant? I think it's a relevant question, but I don't think it's compelling in this case. I think it's not compelling because of all of the factors. And Zhang, it wasn't just the drugs that led to affirmance. It was the fact that the jury had the benefit of being properly instructed at one point. Our jury didn't get that. And we have a prosecutor four times. Wait a minute. I thought that the whole point in that case was the jury instruction lacked the intent element. But the court, this court noted in its opinion that. Could you repeat that? I just, I didn't hear what you just said. Yeah. The court in its opinion stated that it was relevant to their decision that the prosecutor put the correct standard up on its PowerPoint. And it also said directly to the jury, who do you think had the intent to possess this gun? The statements from our prosecutor are very different. She four times says he had to at least known it was there. And that was an important part of that this court's decision in Zhang. And I'll go to my next reason. My third reason that this case is distinguishable from Zhang is there the evidence only pointed to Mr. Zhang. Here we have evidence pointing to four people where the car belongs to a woman and a woman is the major DNA contributor to the gun. So we don't have that same type of inference. And then finally, we had testimony in Zhang from a witness that he had just seen the defendant exercising dominion and control over the gun hours before the guns were seized. And so there's a much stronger inference that there's ownership of those guns. Unlike here, all we get from Ms. Prick is that those guns aren't mine. And I've never seen Mr. Johnson with a gun in that car. That's her testimony. So we don't have the same type of evidence that compelled would compel a jury to conclude that Mr. Johnson intended to possess the gun. And I'd also point to Benford as an example, Your Honors, where this court reversed on plain error and the Benford the defendant acquiesced to criminal liability when he was shown the gun. The officers walked up to him and said, we found a gun and he said, I will have I guess I have to take the charge. The court said that the jury could have taken that evidence and said, maybe he just knew it was there. And I think that we don't have something like that. And even when a defendant acquiesces to criminal liability, you still give it to the jury to decide because the inference has to be compelled. And I don't think the inference is compelled that Mr. Johnson intended to possess this gun in this case. If there are no further questions, I will reserve the remainder of my time. Thank you. You may reserve your time. Let's hear from the United States and Miss McFarland. Good afternoon. May it please the court. Michelle McFarland. I'm appearing on behalf of the United States. This court should affirm Mr. Johnson's convictions and find that this court did not commit plain reversible error by giving the jury a defective instruction on the legal requirements of constructive possession. This is an actual possession case. This case involves direct physical control. Johnson had direct physical control over the firearm at issue in this case. Under the plain error test, Mr. Johnson must establish that the error in this case affected his substantial rights. The first two prongs are not at issue in this case. Johnson cannot establish that the error affected his substantial rights because this is an actual possession case. Johnson cannot show a reasonable... We sometimes can look at where the jury was in this, can't we? I mean if the jury is looking at two theories, both actual possession and constructive possession, isn't there a problem that they could have relied on the faulty instruction to convict? I think that your honor is correct in that there are two theories and that there are two theories under which the jury could have found that the court, or excuse me, that Mr. Johnson possessed the firearm. I think under either theory though, the government's argument is that the evidence was so strong under either theory, either the theory of actual possession or under the theory of constructive possession with respect to intent, that even if the jury had, even if the jury relied on a constructive possession theory, that the jury would have convicted if given the correct jury instruction because the evidence was so substantial and so compelling under the constructive possession and specifically with respect to Johnson's. But you're conceding that the constructive possession instruction was erroneous? We are conceding that the district court committed error and that the error was plain. And your honor, because of, but I think what your honors is cluing in on is that there are two different standards by which the jury could have convicted and could have found that he was in possession of this firearm. But I think that they're distinct and that if the jury found that he was actually in possession of this firearm, they didn't need to even look at the constructive possession aspect of this case. And they didn't need to look to that jury instruction at all because they only need to look to that jury instruction if they don't find he's in actual possession. And the evidence in this case... Counsel, don't we have some, don't we have case law holding that for actual possession, there had to be evidence that Mr. Johnson had been holding the gun? Yes, your honor. That is, I believe those cases are cited in the government's But we don't have that here. We don't have that evidence. Your honor, I respectfully would disagree that the evidence did show under multiple different versions of what the term holding means, that there is evidence that Johnson held the firearm. He was sitting on the gun, but when was he holding the gun? Your honor, I think he was holding the gun by sitting on the gun. That's the first point. Holding by sitting. Is there a case that says sitting is holding? I'm not aware, your honor, not that my research has revealed, I'm not aware of a 10th Circuit case that says that an individual who is sitting on a firearm is in fact holding it. I would... If we have some difficulty with your actual possession theory, you've said that you would rely on a constructive possession theory for prong three of plain air. Is that right? Yes, your honor. I would argue that if this court is not willing to find that the jury would have relied on the actual possession theory, that there was enough substantial evidence with respect to constructive possession and specifically with respect to Johnson's intent, the intent element that was missing from that constructive possession instruction. There was enough evidence that Johnson cannot establish that the air affected his substantial rights. And I think that there's some overlap in terms of the evidence for possession, I think could lend itself to either an actual possession or a constructive possession theory. But I think that the biggest piece of evidence and the most important and most compelling piece of evidence in the case is that the defendant was sitting on top of the firearm and based upon the fact that he was sitting on top of the firearm under the Black's Law Dictionary meaning of the term hold that the government cited in his brief. I think that that shows that this court that he did have direct physical control over the firearm because he was sitting on it. And this court has held in Samora that actual possession occurs when a person has direct physical control over a firearm at a given time. And that's what was occurring in this case. And Johnson did have direct physical control over the firearm at a given time. Additionally, I would point out that there wasn't anybody else in the vehicle. There was some testimony about the fact that Mattie Price was the owner of the vehicle, but there was no one else in the car when the car was pulled over. And I believe my colleague mentioned that there were other individuals that were mentioned that there were four other possible people who could have put the gun in the car or something to that effect. And that's, I think what that is referring to is the fact that there was other DNA or other possible DNA profiles besides. So there were four total, but there was never any indication that there was anybody else in the car, anyone else specific in the car and anyone else specific with that was associated. There was a nexus with that firearm besides Mr. Johnson. He had drugs in a pocket or in a jacket on his, on his person. Yes. Well, you, you would think if he, if he had handled the gun and placed it on the seat or, you know, probably more logically had been somewhere else in the, in the front and he put it under, under his body to conceal it during the traffic stop. You'd think there'd be a little better DNA residue than we found in this case. That, that bothers me that there's not something that would be more, more obvious. I, Your Honor, I think that the, that specific, the lack of DNA, there was a DNA expert that testified Ms. Farling. She was able to testify about her experience with DNA in these cases and why there's not necessarily DNA on every object that someone handles. And so I think the jury heard that evidence and I think the jury was able to determine, you know, that there wasn't, her testimony wasn't necessarily that Johnson's DNA isn't on this firearm. It never was on this firearm. And she wasn't drawing a conclusion. He'd never touched the firearm. She was simply saying that based upon her analysis, she couldn't confirm that his DNA was on the firearm. You couldn't exclude him one way or the other. Right. And I think that that's important in light of, in light of what Your Honor brings up about the DNA. But I think the bigger context of that is, is important in this case. And the fact that the jury heard that bigger context as well. And another point that Your Honor brings up is the fact that this Johnson wasn't possessing this gun in a vacuum. He also had $411 on him. He had crack cocaine on him and he was convicted of possessing that crack cocaine with the intent to sell it. And that, those items were in his and hidden his pocket and his pants in which he was seated on a firearm in this case. And so the, the fact that he was in possession of the crack cocaine that the intended distribute is not an issue. In this case, it's not something that has been claimed as an error in this case. And it's not that that conviction is not being attacked in this appeal, but what is being attacked is, is his gun possession. But if you think about logically and what the evidence showed in this case, because Johnson was sitting on the firearm, he was really, he was in possession of it in a similar way to how he was in possession of the crack cocaine in this case. And, and I would argue that there really isn't a lot of difference between someone sitting on a firearm and someone having a firearm in their pocket, especially when someone is sitting down, because I think it's difficult given how large a Beretta pistol is. That's what the gun was in this case. It's a, larger gun, a larger handgun. And so I think that tells us two things. One, it shows his knowledge that the firearm was there. And I think that it also shows that specifically with, with respect to the point that I'm making here is that it would be difficult for someone to have that gun in their pocket while they're sitting. And so I think that that lends itself and that shows that really in this case, and again, the government's arguing there really isn't a lot of difference between Johnson's possession of the crack cocaine and Johnson's possession of the firearm in this case. And again, the government would argue based on all the evidence that was presented at the trial that, that the jury did conclude and that the government's evidence was, was strong evidence supporting the conviction for an actual possession theory. And because of the strong evidence under this court's precedent in Sorenson, that the conviction on the alternate theory for which there was no instructional error, in this case, the actual possession, defendant general cannot show prejudice to his substantial rights. And, and because of that, the government doesn't believe that Johnson can show present prejudice to substantial rights in this case. But as the court's already pointed out, if the government is not willing to accept that an individual is in direct physical control over a firearm, when they are sitting on the firearm, I think that the court can be confident in the outcome. And I think that Johnson cannot show reasonable probability that but for the error, the outcome would have been different, even if the court, excuse me, even if the jury had relied on a constructive possession theory. That's because the evidence with respect to Johnson's intent, the missing element in the jury instruction was very strong, and was compelling. What was the intent, the fact that drugs were present? Your Honor, the government points out four, four facts or four factors that support that argument. And the first, that's one of the factors that I would point to the other ones are the fact that, again, that he was his proximity to the gun that he was directly controlling it by sitting on it. And I think that that shows that coupled with his refusal to get out of the car when confronted by police show his intent to hide the firearm, his intent to conceal it, and his intent to continue to use it. Additionally, I would point to, even though this is a case in which the owner of the vehicle, Ms. Price, claimed no knowledge of the gun. And as I've already argued, because Ms. Price claimed no knowledge of the gun, there was a nexus between Mr. Johnson and the gun. And it removes Ms. Price as a possible possessor of the firearm. I also think something else to note in this case, the gun was found in a car and Mr. Johnson being the sole occupant of the car and where the gun was found. I think that it allows for the inference in this case that Mr. Johnson was the person that put the gun in the car. Because a car is a moving vehicle, the gun didn't appear there without anybody putting it there. And so I think based upon that, the jury could conclude and that there was a very strong inference that Johnson, being the sole occupant of the car and being that Ms. Price denied any knowledge of the gun, that there was a strong inference that Mr. Johnson was the one who put the gun in the car. Would you say the quantity of the drugs was more indicative of personal use or distribution use? The quantity of the drugs was more indicative of distribution. I think both the quantity and the way it was packaged, coupled together, is indicative of distribution and not personal use in this case. I think additionally, the lack of any sort of device for ingesting the drugs, there was nothing along those lines found on Mr. Johnson's person. I think that that points toward a distribution rather than a personal use as well. And there was testimony, I believe, from Special Agent Gentry on this point. And she testified, I don't know that it was specifically about the quantity, but it was about the many factors that were present that led to her conclusion that Mr. Johnson possessed these drugs for distribution. Your Honors, if there are no other additional questions. All right, hearing none, you may be excused. And Ms. Carruthers, you have some rebuttal time. Thank you. I'd like to first address the government's argument that this is an actual possession case. Mr. Johnson sitting on or near the gun is simply touching, and touching a gun is insufficient proof of actual possession in any circuit. And if this was an actual possession case, then I don't think the government would have offered both actual possession and constructive possession to the jury three times. She said, I would like you to look at the entire instruction where they have actual and constructive possession. She did not exclude constructive possession from the jury's consideration because this is not an actual possession case. And then I'd like to talk about her analogy about a gun in the pocket being similar. I disagree because that would still give you the inference that somebody had to lift it up and put it there. And that gives you the inference that the defendant has handled the gun. And you don't have to handle a gun to sit by it. You could be a person who is driving at night with a bit intoxicated and just chose not to touch something that does not belong to you. And the fact that Mr. Johnson's DNA isn't on the gun supports that. And then I finally want to say that about the question about the intent Mr. Johnson had and why he didn't immediately get out of the car. I don't think that's very clear either. He said, first, he could have been concerned about his safety. First, he said to the officers, don't de-bow me, don't de-bow me while they're trying to get him out of the car, which Officer Grado testified meant, don't knock me out, don't knock me out. And so he could have been afraid. And that's why he didn't immediately get out of the car. Officer Mitchell also supplied different reasons why Mr. Johnson might not have immediately got out of the car, which would refute this idea that he intended to hide it. It was that he might have been trying to see if the officer was serious. This was Officer Mitchell's testimony, that he might have been trying to escape. He may have been trying to see if I was serious. And then the final thing that he could have been considering when he wasn't immediately getting out of the car was, hey, I know a gun is a weapon, and I know that I might get in trouble. But I don't never intended to do anything with this gun. And because the jury never had to grapple with those questions, I think it's important that this court remand so that the court, so that they can consider that evidence. And importantly, they had no reason to, because the prosecutor at four times told them that Mr. Johnson had to at least know the gun was there. And so this court cannot be confident in the outcome of Mr. Johnson's trial, and we request that you reverse and remand. Thank you, counsel. Counsel are excused, and the case will be submitted.